**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RODNEY OMANOFF AND NEIL VANLEEUWEN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br><br> v. <br><br> PATRIZIO & ZHAO LLC, et al., <br><br> Defendants. | Civil Action No. 14-723 <br><br><br> OPINION |

ARLEO, UNITED STATES DISTRICT JUDGE

I. INTRODUCTION

This matter comes before the Court by way of Defendants Patrizio & Zhao LLC ("P&Z"), P&K CPAs LLC ("P&K"), Xienggeng (John) Zhao ("Zhao"), and John G. Patrizio's ("Patrizio") (collectively "Defendants") motion to dismiss Plaintiffs Rodney Omanoff and Neil Vanleeuwen's (collectively "Plaintiffs") Amended Complaint [Dkt. No. 22]. The Court considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion is **DENIED WITH PREJUDICE**.

II. BACKGROUND

The following factual allegations are taken from Plaintiffs' Amended Complaint. See Am. Compl., Dkt. No. 20.

During the time period at issue in this litigation, Defendant P&Z was an auditing and accounting firm.[1] Defendants Patrizio and Zhao are both CPAs and were managing partners of P&Z.

Non-party Keyuan Petrochemicals, Inc. ("Keyuan"), a Nevada corporation with its headquarters in China, manufactures and sells petrochemical products. Keyuan retained P&Z to perform auditing services in connection with Keyuan's private placement offering. As part of this engagement, P&Z issued clean[2] audit and interim reports of Keyuan's financial statements for financial year 2008, financial year 2009, second quarter 2010, and third quarter 2010.

In these audit and interim reports, P&Z made the following representations: (1) that its audits complied with Public Company Accounting Oversight Board ("PCAOB") standards; (2) Keyuan's financial statements conformed with generally accepted accounting principles ("GAAP"); and (3) it was not aware of any material modifications to Keyuan's financial statements necessary for Keyuan to conform with GAAP. Plaintiffs claim all of these statements were false. The gravamen of Plaintiffs' case is that: (1) Keyuan, contrary to GAAP requirements, did not disclose material related-party transactions in the financial statements that P&Z audited; (2) at the time P&Z audited these financial statements, P&Z had actual knowledge of the related-party transactions; and (3) in the audit and interim reports, P&Z did not disclose a

---

[1] In 2014, P&Z merged with RK Associates of NJ LLC to form P&K. Therefore, P&K is P&Z's successor-in-interest.

[2] A "clean" or "unqualified" opinion is "the most favorable report an auditor may give, represents the auditor's finding that the company's financial statements fairly present the financial position of the company, the results of its operations, and the changes in its financial position for the period under audit, in conformity with consistently applied generally accepted accounting principles." In re Bio-Tech Gen. Corp., No. 02-6048, 2006 WL 3068553, at *1 n.2 (D.N.J. Oct. 26, 2006) (quoting In re WorldCom, Inc. Sec. Litig., 346 F. Supp. 2d 628, 643 n.17 (S.D.N.Y. 2004)).

qualification that Keyuan's related-party transactions were not audited and/or were not adequately disclosed, which violated PCAOB standards.

Keyuan terminated its relationship with P&Z on January 17, 2011. The next day, Keyuan retained KPMG to performing accounting services. Prior to the market opening on April 1, 2011, trading of Keyuan's common stock was halted. Before trading was halted, Keyuan's common stock was trading at $4.88 per share. Later that morning, Keyuan filed a Form 12b-25, announcing that it would not be able to timely file its 2010 annual report due to issues raised by KPMG "regarding certain cash transactions and recorded sales." Additionally, Keyuan announced its Audit Committee was initiating an investigation. Later that day, Keyuan filed a Form 8-K, in which it announced that KPMG had concluded that Keyuan's previously issued financial statements (i.e., the financial statements P&Z audited) could not be relied upon. On May 20, 2011, KPMG resigned as Keyuan's auditor.

On October 6, 2011, Keyuan filed a Form 8-K, announcing its stock would be delisted from the NASDAQ. The next day, when Keyuan's common stock began trading over-the-counter, the stock price opened at $1.05 per share and closed at $1.50 per share.

On October 20, 2011, Keyuan filed its 2010 Form 10-K, in which it disclosed the related-party transactions at issue. On November 1, 2011, Keyuan filed revised Form 10-Qs for the second quarter 2010 and third quarter 2010, which also included the related-party transactions.

On September 13, 2013, the SEC initiated an action against P&Z and Zhao (the "SEC Action"). P&Z and Zhao settled with the SEC by agreeing to a three-year ban and paying a $30,000 fine.

Plaintiffs' Amended Complaint contains two causes of action: (1) a Section 10(b) claim against P&Z, P&K, and Zhao; and (2) a Section 20(a) claim against Zhao and Patrizio.

### III. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: namely, "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Finally, the Private Securities Litigation Reform Act ("PSLRA") has established a heightened pleading requirement in Section 10(b) securities fraud cases. Specifically, the complaint must "with respect to each act or omission alleged to violate this chapter, state with

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). As such, the "PSLRA alters the normal operation of inferences under Fed. R. Civ. P. 12(b)(6)" by requiring a strong inference of scienter. In re Digital Island Sec. Litig., 357 F.3d 322, 328 (3d Cir. 2004) (internal citations omitted). Therefore, a complaint survives a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).

## IV. ANALYSIS

### A. Section 10(b) Claim

To state a claim under Section 10(b) of the Exchange Act, a party must allege:

> (1) a material misrepresentation (or omission) [i.e., falsity]; (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation;" (5) economic loss; and (6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss.

In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 275 (3d Cir. 2006) (quoting Dura Pharm., Inc. v. Broudo, 554 U.S. 336, 341-42 (2005)). Pursuant to 28 U.S.C. § 1658(b), the statute of limitations as to this claim is the earlier of: "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."

Defendants argue that Plaintiffs have failed to plead scienter, loss causation, and falsity. Additionally, Defendants argue that this claim is untimely.

#### 1. Scienter

As noted above, a heightened pleading standard applies to Plaintiffs' allegations of scienter. The parties both recognize that Institutional Inv. Grp. v. Avaya, Inc., 564 F.3d 242, 267

5

(3d Cir. 2009), holds that a Section 10(b) plaintiff may plead scienter by alleging "facts giving rise to a 'strong inference' of 'either reckless or conscious misbehavior.'" In making this determination, the Court must

> weigh the plausible nonculpable explanations for the defendant's conduct against the inferences favoring the plaintiff. A strong inference of scienter is one that is cogent and at least as compelling as any opposing inference of nonfraudulent intent. The pertinent question is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard. Omissions and ambiguities count against inferring scienter.

In re Wilmington Trust Sec. Litig., --- F. Supp. 2d ----, 2014 WL 1151988, at *9 (D. Del. Mar. 20, 2014) (quoting Avaya, 564 F.3d at 267-68).

The Third Circuit has defined recklessness as "[h]ighly unreasonable (conduct), involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Suprema, 438 F.3d at 276 (quoting SEC v. Infinity Grp. Co., 212 F.3d 180, 192 (3d Cir. 2000)) (modification in original).

In Suprema, the Third Circuit directly addressed scienter pleading requirements as applied to a claim brought against an accounting firm. In that case, investors who had purchased Suprema stock brought suit against its officers, outside directors, underwriters, and its auditor, BDO. Id. at 263-69. As to the accounting firm, the investors alleged it failed to follow generally accepted accounting standards ("GAAS") and to heed certain "red flags"[3] that something was "grossly amiss" with the company's accounting. Id. at 279.

---

[3] "'Red flags' are those facts which come to the attention of an auditor which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the

6

The Third Circuit summarized the scienter pleading requirement as follows:

> A showing that an auditor either lacked a genuine belief that its representations were supported by adequate information or engaged in auditing practices so shoddy that they amounted at best to a "pretended audit" has traditionally supported a finding of liability, even in the face of assertions of good faith.
>
> . . . .
>
> At the pleading stage, courts have recognized that allegations of GAAS violations, coupled with allegations that significant "red flags" were ignored, can suffice to withstand a motion to dismiss.

Id. at 279. Because the investors had alleged the accounting firm failed to comply with GAAS and explained in detail how these alleged GAAS violations led the accounting firm to overlook numerous "red flags," the Third Circuit reversed the district court's dismissal. Id. at 280; see also Wilmington Trust, 2014 WL 1151988, at *10 (denying motion to dismiss when plaintiff alleged accounting firm committed GAAS violations coupled and failed to heed "red flags").

Defendants argue that Plaintiffs have failed to allege facts giving rise to a strong inference of either reckless or conscious misbehavior. The Court disagrees. To begin, Plaintiffs allege the context in which the audits were done—Keyuan was a new company with a limited operating history, weak internal controls, and employees who were not knowledgeable about U.S. accounting requirements. Am. Compl., Dkt. No. 20 ¶ 41. Despite that knowledge, Defendants ignored obvious "red flags" that should have indicated that something was seriously amiss. Id. In the audit planning process, Zhao requested a list of related parties and related-party transactions and was told there were none. Id. Defendants, however, later obtained a list of related parties and related-party transactions, which contradicted Keyuan's prior representation. Id. In fact, Defendants' audit work papers and planning documents reflected these related-party

---

detriment of its investors." In re AOL Time Warner, Inc. Sec. & ERISA Litig., 381 F. Supp. 2d 192, 240 n.51 (S.D.N.Y. 2004).

transactions. Id. Defendants nonetheless issued "clean" audit and interim reports for these financial statements. Id. Thus, consistent with Suprema and Wilmington Trust, the Court finds these allegations sufficient to survive a motion to dismiss.

Defendants also argue Plaintiffs fail to plead scienter because Keyuan's corrected financial statements, while disclosing the related-party transactions, contain the same profit and loss figures. To accept Defendants' argument would permit an accounting firm to ignore a company's failure to disclose related-party purchases or sales, so long as these transactions are ultimately reflected in the company's total profit and loss figure. That is not the law. See Cheun v. Keyuan Petrochemicals, Inc., No. 11-9495, 2012 WL 5834894, at *9 (C.D. Cal. Nov. 1, 2012) (finding Keyuan's failure to disclose the related-party transactions was sufficient to allege scienter against Keyuan's CEO).

Finally, Defendants argue that the SEC's initiation of an action against P&Z and Zhao premised upon negligence, not fraud, demonstrates that Defendants did not engage in fraud. Defendants fail, however, to provide the Court with any authority supporting the proposition that a private party may only bring a Section 10(b) claim against an accounting firm if the SEC first initiates an action sounding in fraud. See also Vanleeuwen v. Keyuan Petrochemicals, Inc., No. 13-6057, 2014 WL 3891351, at *4 n.5 (S.D.N.Y. Aug. 8, 2014) ("The SEC's decision to not prosecute its claims is irrelevant as to whether Plaintiffs have plausibly alleged claims in this case.").

Thus, the Court concludes that Plaintiffs have adequately pled scienter.

### 2. Falsity

The Court shall next examine whether Plaintiffs have sufficiently pled the existence of a material misrepresentation or omission. A statement or omission is material if there is "a

substantial likelihood that a reasonable shareholder would consider it important in deciding how to act." Wilmington Trust, --- F. Supp. 2d ----, 2014 WL 1151988, at *6 (quoting In re Aetna, Inc. Sec. Litig., 617 F.3d 272, 283 (3d Cir. 2010)). In contrast, "subjective analyses and general or vague statements of intention or optimism which constitute no more than mere corporate puffery" are not actionable. Id.

As noted above, Rule 9(b) and the PSLRA impose heightened pleading requirements in Section 10(b) cases. For a Section 10(b) claim to survive a motion to dismiss, a complaint must "specify each statement alleged to have been misleading and, if an allegation regarding the statement or omission is made on information and belief, the complaint [must] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B).

Here, Defendants' alleged misrepresentations are contained in P&Z's audit and interim reports. See Am. Compl., Dkt. No. 20 ¶¶ 20, 29, 33. In these audit and interim reports, P&Z stated that: (1) the audits complied with PCAOB standards; (2) Keyuan's financial statements were GAAP compliant; and (3) it was not aware of any required modifications to Keyuan's financial statements. Id. ¶¶ 3-4.

Defendants argue: (1) these alleged misrepresentations are opinions; (2) a plaintiff seeking to recover based upon an auditor's misstatements of opinion must plead both that the opinion was objectively false and the auditor knew the opinion was false ("subjective falsity"); and (3) Plaintiffs have failed to plead subjective falsity.

The Court disagrees. Even if the Court accepts Defendants' contention that the alleged misrepresentations are statements of opinion, Plaintiffs have pled both objective and subjective falsity. Plaintiffs allege both that Keyuan's financial statements were not GAAP compliant and Defendants knew these financial statements were not GAAP compliant. Id. ¶¶ 41-57. Similarly,

Plaintiffs allege P&Z's audit did not comply with PCAOB standards and P&Z knew its audit did not comply with PCAOB standards. Id. ¶¶ 58-71. This is sufficient. Thus, the Court finds Plaintiffs have adequately pled falsity.

### 3. Loss Causation

The PSLRA requires a plaintiff to prove "that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages" ("loss causation"). 15 U.S.C. § 78u-4(b)(4). "The loss causation inquiry asks whether the misrepresentation or omission proximately caused the economic loss." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 426 (3d Cir. 2007). The fact that a misrepresentation occurred and the share price declined is not enough. Id. Instead, to demonstrate loss causation, the plaintiff must prove "that the untruth was in some reasonably direct, or proximate, way responsible for his loss." Id. (quotation and citation omitted). The Third Circuit has repeatedly cautioned that this determination is a fact-sensitive inquiry typically left to the trier of fact. See id. at 427 n.4; EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 884 (3d Cir. 2000).

Defendants argue Plaintiffs cannot show loss causation because Keyuan did not actually disclose the related-party transactions until after the class period closed on October 7, 2011. The Court disagrees. In In re Bradley Pharmaceuticals, Inc. Securities Litigation, investors brought a Section 10(b) claim against Bradley Pharmaceuticals ("Bradley") and certain officers based upon Bradley's use of a "sham" transaction to inflate its quarterly earnings. 421 F. Supp. 2d 822, 824 (D.N.J. 2006). On February 28, 2005, Bradley issued a press release, in which it stated it was under SEC inquiry as to the company's "revenue recognition and capitalization of certain payments." Id. That day, the stock price plummeted. It was not until April 27, 2005, however, that Bradley issued corrected financial results. Id. In finding loss causation adequately pled, the

court held that the "truth" about the sham transaction "did not take the form of a single, unitary disclosure, but occurred through a series of disclosing events." Id. at 828-29. Because the February 28, 2005, press release "partially disclosed what the alleged misrepresentations had concealed from the market[,]" the motion to dismiss was denied. Id. at 829.

Here, trading of Keyuan's common stock halted on April 1, 2011, and resumed on October 7, 2011. Am. Compl., Dkt. No. 20 ¶ 79. Between these two dates, Keyuan issued a Form 12b-25 and two Form 8-Ks, which called into question the reliability of the financial statements for which P&Z had issued clean audit and interim reports. Id. ¶¶ 76-77. For example, Keyuan states in its April 1, 2011, Form 8-K that KPMG's audit had revealed the existence of "unexplained issues regarding certain cash transactions and recorded sales" and, as a result, "there is a possibility that we may be required to make certain adjustments to certain of our previously issued financial statements, and that such previously issued financial statements may not be relied upon." Id. ¶ 77. Plaintiffs allege that these corrective disclosures as to the reliability of Keyuan's financial statements caused a decline in Keyuan's share price. Id. ¶¶ 72-83. While Defendants argue that the titanic decline in share price is attributable to several material weaknesses that Keyuan disclosed during this period, this is a factual dispute that cannot be adjudicated at this early stage. See Robbins v. Kroger Props., Inc., 116 F.3d 1441, 1447 n.5 (11th Cir. 1997) ("To satisfy the loss causation element, a plaintiff need not show that a misrepresentation was the sole reason for the investment's decline in value.").

Thus, like Bradley, the Court finds that Plaintiffs have sufficiently pled loss causation by alleging that the disclosures between April 1, 2011 (the day trading halted), and October 7, 2011 (the date the class period closed), partially disclosed the misrepresentations that were fully revealed on October 20, 2011 (the date Keyuan disclosed the related-party transactions).

11

### 4. Statute of Limitations

Pursuant to 28 U.S.C. § 1658(b), the statute of limitations as to Plaintiffs' Section 10(b) claim is the earlier of: "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." The two-year "discovery of the facts" limitations period begins to run once the plaintiff did discover, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation.

Here, the initial complaint was filed on February 4, 2014. As such, Plaintiffs' claims are barred if Plaintiffs knew, or reasonably could have known, of the facts constituting the violation on or before February 4, 2012.

Defendants assert this action is untimely because that it is "indisputable" that Plaintiffs were placed on inquiry notice on April 1, 2011, when Keyuan stated its financial statements could not be relied upon. Defendants claim that the April 1, 2011, statement, coupled with the stock price drop and corrective financial statements issued on October 20, 2011, demonstrate that "a reasonable investor would have diligently investigated a potential claim throughout 2011." (Def. Br., Dkt. No. 22-1, at 24).

The Court disagrees. The Supreme Court has explicitly rejected "inquiry notice" as triggering the two-year statute of limitations. Instead, the Court must determine when Plaintiffs did discover, or a reasonably diligent plaintiff could have discovered, the facts constituting the violation, including scienter. Here, the facts constituting the violation were revealed by the SEC Action, which was disclosed on September 30, 2013. This action was instituted three months later. As such, it is timely.

B. Section 20(a) Claim

"Section 20(a) of the Exchange Act imposes joint and several liability upon one who controls a violator of Section 10(b)." Suprema, 438 F.3d at 284. To state a claim, a plaintiff must allege "that one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities laws." Id. Defendants do not make any independent challenges to the propriety of this cause of action, and instead only argue in their briefs that Plaintiffs have failed to plead a Section 10(b) claim (i.e., a primary violation). Because the Court finds that Plaintiffs have properly pled a Section 10(b) claim, Defendants' motion to dismiss this cause of action is also denied.

V. CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss [Dkt. No. 22] is **DENIED WITH PREJUDICE**. An appropriate Form of Order accompanies this Opinion.

Dated: March 31, 2015

/s Madeline Cox Arleo
Hon. Madeline Cox Arleo
United States District Judge